Joseph TOURANGEAU, et al.

v.

UNIROYAL, INC., et al.

No. CIV.3:86CV208 (AHN).

United States District Court, D. Connecticut.

March 30, 2001.

RULING ON CROSS MOTIONS FOR
SUMMARY JUDGMENT

NEVAS, District Judge.

The issue in the current chapter of this inordinately prolonged litigation is wheth-

er Uniroyal, Inc. ("Uniroyal") is entitled to contractual indemnification from Michelin North America, Inc. ("Michelin") for attorneys' fees it incurred in connection with the 1994 enforcement action (the "Enforcement Action") in which Uniroyal opposed Michelin's claim that it was not bound by the 1987 consent judgment ("Consent Judgment") to pay vested retirement benefits to the *Tourangeau* tire retirees.[1]

Now pending are Uniroyal's motion for summary judgment and Michelin's cross motion for summary judgment. For the following reasons, Uniroyal's motion [doc. # 488] is GRANTED. Michelin's motion [doc. # 492] is DENIED.

## STANDARD

A motion for summary judgment may be granted if the court determines that there are no genuine issues of material fact to be tried and that the moving party is entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In considering a Rule 56 motion, the court*s responsibility is not to resolve disputed issues of fact, but to assess whether there are any factual issues to be tried, while resolving all ambiguities and drawing all reasonable inferences against the moving party. *See Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.1986) (citing *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *Eastway Constr. Corp. v. City of N.Y.*, 762 F.2d 243, 249 (2d Cir.1985)); *see also Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir.1989); *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57 (2d Cir. 1987). The substantive law governing a particular case identifies the facts that are material. *See Anderson*, 477 U.S. at 258,

106 S.Ct. 2505. "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir.1992) (quoting *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505).

Summary judgment may be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that reasonable minds could not differ as to the material facts. *See Miner v. Glens Falls*, 999 F.2d 655, 661 (2d Cir.1993); *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.1991); *Suburban Propane v. Proctor Gas, Inc.*, 953 F.2d 780, 788 (2d Cir.1992).

Here, there are no material factual issues in dispute. The claims of both parties are grounded in certain unambiguous documents and the dispute presents purely legal questions that the court can determine as a matter of law. *See American Home Assur. Co. v. Abrams*, 69 F.Supp.2d 339 (D.Conn.1999).

## DISCUSSION

I. *Uniroyal's Claims in Support of Summary Judgment*

After the Enforcement Action was remanded by the Second Circuit in 1997, Uniroyal filed a claim against Michelin seeking indemnification for the expenses, consisting of attorney's fees and costs, that it incurred in the Enforcement Action. Uniroyal now seeks summary judgment on that claim. It asserts that it entered the Enforcement Action to oppose Michelin's repudiation of its obligations to the *Tourangeau* tire retirees and to protect itself from having to pay those benefits in the event Michelin was successful in avoiding

---

1. The court assumes general factual and procedural familiarity with this on-going litigation. *See generally, Tourangeau v. Uniroyal,*

101 F.3d 300 (2d Cir.1996) (affirming *inter alia* district court's decision that Michelin was bound by the Consent Judgment).

its obligations under the Consent Judgment.

Uniroyal's claim to indemnification is based on three agreements:

1. The Assumption of Liabilities and Indemnification Agreement between Uniroyal and Uniroyal Tire Co. ("Uniroyal Tire") dated October 27, 1985 ("Assumption & Indemnification Agreement").[2] In this Agreement, Uniroyal Tire assumed Uniroyal's welfare benefit obligations and agreed to indemnify

> Uniroyal, its successors and assigns ... from and against any and all losses, liabilities, claims, damages, costs and expenses (including reasonable attorneys' fees and any and all expenses whatsoever reasonably incurred in investigating, preparing, or defending against litigation, commenced or threatened, or any claim whatsoever ...) arising out of or related, or purporting to be related, in any manner to the obligations and liabilities hereby assumed by Tire.

2. The Restated Assumption of Liabilities and Indemnification Agreement dated on July 31, 1986 ("Restated Assumption & Indemnification Agreement").[3] In this Agreement, Uniroyal Tire restated its assumption and indemnification obligations contained in the 1985 Agreement.

3. The UGTC Partnership Assumption and Indemnification Agreement dated August 1, 1986, entered into by Uniroyal Tire and the UGTC Partnership ("UGTC Partnership Assumption & Indemnification Agreement").[4] In this Agreement, the UGTC Partnership assumed from Uniroyal Tire the welfare benefit obligations that Uniroyal Tire had assumed from Uniroyal, and the UGTC Partnership agreed to indemnify Uniroyal, Uniroyal Tire and their successors and assigns.

Specifically, pursuant to this Agreement, the UGTC Partnership assumed liabilities of

> every kind and description, whether accrued, absolute or contingent, or whether in existence on [August 1, 1986] or arising hereafter, relating to or arising out of the Uniroyal Tire Business ..., including without limitation all the obligations and liabilities of Uniroyal [Tire] relating to or arising out of any operations of the Uniroyal Tire Business heretofore conducted and subsequently discontinued by Uniroyal [Tire] or Uniroyal, Inc.

Further, under this Agreement, the UGTC Partnership also specifically assumed

> all other obligations and liabilities associated with ... any past employees of Uniroyal Tire or [Uniroyal] ... who were, at the time of retirement or termination, employed in connection with the Uniroyal Tire Business ... including without limitation, those obligations and liabilities which may arise under ... any pension, post-retirement, health acci-

---

2. In 1985–1986, Uniroyal transferred its tire business, including all of its obligations, liabilities and assets, through Uniroyal Holding, Inc. ("Uniroyal Holding") to Uniroyal Tire Co., Inc ("Uniroyal Tire"). One of the liabilities that Uniroyal Tire assumed was the payment of welfare benefits to Uniroyal's tire retirees.

3. After the *Tourangeau* litigation was commenced in June, 1986, Uniroyal Tire reaffirmed its agreement to assume Uniroyal's welfare benefit liabilities to retirees and to indemnify Uniroyal, its successors and assigns for losses incurred in connection with the obligations it assumed from Uniroyal.

4. On August 1, 1986, the tire business of Uniroyal Tire was transferred to a joint venture between Uniroyal Tire and the B.F. Goodrich Co. The joint venture was called the Uniroyal Goodrich Tire Co. (the "UGTC Partnership").

dent, disability and survivor benefit plans or programs ... and all other employment-related claims of the Uniroyal [Tire] [e]mployees.

Finally, with respect to indemnification, the Agreement stated that the UGTC Partnership would indemnify Uniroyal, Uniroyal Tire and their successors and assigns

> from and against any and all losses, liabilities, claims, damages, costs and expenses (including reasonable attorneys' fees and any and all expenses whatsoever reasonably incurred in investigating, preparing or defending against any litigation, commenced or threatened, or any claim whatsoever ...) arising out of or related or purporting to be related, in any manner to the obligations and liabilities hereby assumed by the Partnership.

In its motion for summary judgment, Uniroyal maintains that, when the Michelin-affiliated UGTC took control of the UGTC Partnership,[5] UGTC assumed the UGTC Partnership's obligations as set forth in the UGTC Partnership Assumption & Indemnification Agreement, including the indemnification obligations and all other liabilities that Uniroyal Tire had assumed from Uniroyal under the 1985 Assumption & Indemnification Agreement, the 1986 Restated Assumption & Indemnification Agreement, and the UGTC Partnership Assumption & Indemnification Agreement.

Uniroyal asserts that these Agreements make it clear that Michelin has succeeded to broad indemnification obligations and that the litigation expenses Uniroyal incurred in the Enforcement Action are covered expenses because they constitute "losses, damages, costs and expenses" incurred in preparing or defending against litigation that "arose from or [was] related to the obligations and liabilities to the salaried tire retirees." Uniroyal maintains that it was required to enter the Enforcement Action to insure that Michelin would honor the obligations and liabilities to the salaried tire retirees that its predecessor assumed in the UGTC Partnership Assumption & Indemnification Agreement, and that Uniroyal took action to oppose Michelin's repudiation to protect itself from back-up liability to the tire retirees in the event Michelin was successful.[6]

Finally, Uniroyal submits that Uniroyal Holding, which assumed Uniroyal's back-up obligation to provide benefits to the tire retirees in the 1994 Amended Settlement Stipulation,[7] is an indemnitee under the

**5.** In 1989, three Michelin-affiliated corporations took control of the UGTC Partnership and dissolved it in 1990. *See* Acquisition Agreement Among Tire Holding 1, Inc., Tire Holding 2, Inc., Tire Holding 3, Inc., UGTC Holding Corporation, Uniroyal Holding, Inc and Uniroyal Tire Company, Inc. dated as of September 29, 1989 (the "1989 Acquisition Agreement"). The successor corporation was called the Uniroyal Goodrich Tire Co., Inc. ("UGTC"), and was controlled by Michelin. There is no dispute that Michelin is the successor-in-interest to UGTC and the UGTC Partnership.

**6.** In 1994, after Michelin announced contribution rate increases that the tire retirees would have to pay for their welfare benefits under the Consent Judgment, the tire retirees moved to enjoin the increases. In response, Michelin declared that it did not regard itself as bound to provide vested retiree benefits under the Consent Judgment. Uniroyal sided with the *Tourangeau* plaintiffs in opposing Michelin's repudiation, but took no position on whether Michelin was entitled to raise the contribution rates or whether the plaintiffs were entitled to attorneys fees. Both this court and the Second Circuit found that Michelin was bound by the Consent Judgment. *See Tourangeau*, 101 F.3d 300.

**7.** In 1994, after Polycast Technology Corp., the successor to Uniroyal Plastics, filed for bankruptcy and defaulted on the medical benefit obligations it owed to the plastics sub-

UGTC Partnership Assumption & Indemnification Agreement, because the indemnification provision in that Agreement runs to Uniroyal's successors and assigns.

The court agrees with Uniroyal's claims and finds that either Uniroyal or Uniroyal Holding is entitled to indemnification from Michelin for the attorneys' fees and costs reasonably incurred in connection with the Enforcement Action and the opposition to Michelin's claim that it was not bound by the Consent Judgment to provide vested welfare benefits to the tire retirees. This conclusion is not affected by Michelin's arguments in opposition to Uniroyal's claims, which are discussed below.

II. *Michelin's Claims in Opposition to Uniroyal's Motion and in Support of its Motion for Summary Judgment*

Michelin makes three main arguments in opposition to Uniroyal's motion for summary judgment and in support of its cross motion seeking summary judgment on its claim that it is not obligated to indemnify Uniroyal.[8]

First, Michelin maintains that only Uniroyal Tire and CDU Trust, the successor to Uniroyal, would be entitled to indemnification under the UGTC Partnership Assumption & Indemnification Agreement, but neither of these entities incurred any losses in the Enforcement Action. It says only Uniroyal Holding[9] had losses in the Enforcement Action, but maintains that

group of *Tourangeau* plaintiffs, the CDU Trust, Uniroyal Holding and the *Tourangeau* plaintiffs renegotiated and restructured Uniroyal's back-up obligations under the Consent Judgment. According to the 1994 Amended Settlement Stipulation, CDU Trust transferred its liability to the *Tourangeau* plaintiffs to Uniroyal Holding and the *Tourangeau* plaintiffs released CDU Trust from liability under the Consent Judgment, and Uniroyal Holding expressly assumed CDU Trust's back-up obligations.

Uniroyal Holding is not a named indemnitee under any indemnification or assumption agreement and is thus not entitled to indemnification.

Second, Michelin asserts that the indemnification provision of the UGTC Partnership Assumption & Indemnification Agreement only provides for indemnification in defensive situations, i.e., when a claim is made against an indemnitee by a third party. It maintains that no third-party or other claim was made against an indemnitee in the Enforcement Action. Rather, Michelin says that Uniroyal Holding voluntarily participated in the Enforcement Action because of its obligations to the *Tourangeau* plaintiffs under an alleged cooperation pact contained in the Amended Settlement Stipulation between CDU Trust, Uniroyal Holding and the *Tourangeau* plaintiffs.

Finally, Michelin contends that the indemnification provision of the UGTC Partnership Assumption & Indemnification Agreement expired when the UGTC Partnership dissolved in 1990. Michelin further asserts that under the 1989 assumption agreement, which was executed by the purchasers of the UGTC Partnership, only Uniroyal Tire is an indemnitee, but Uniroyal Tire has no right to indemnification in this case because it did not take part in the underlying litigation or the Enforcement Action.

None of these claims have merit.

8. Michelin asserted other arguments and defenses in its memoranda in opposition to Uniroyal's motion and in support of its cross motion, but did not pursue them at oral argument. Nonetheless, the court has considered them, but has found them also to be without merit and will not address them in this ruling.

9. Uniroyal Holding is a subsidiary of CDU Trust and the successor to CDU Trust's back-up obligations to the *Tourangeau* plaintiffs.

### A. *Uniroyal Holding Is A Successor To Uniroyal*

■ Michelin argues that Uniroyal Holding, which is the only entity that could have incurred an indemnifiable loss in the Enforcement Action, is not entitled to indemnification because it is neither an indemnitee under any of the Agreements nor an assignee or successor of an indemnitee. Michelin maintains that the only indemnitees under the UGTC Partnership Assumption & Indemnification Agreement are Uniroyal Tire and CDU Trust, the successor to Uniroyal, but neither of these entities had any losses in the Enforcement Action. It asserts that CDU Trust faced no risk of loss or liability to the *Tourangeau* plaintiffs because it transferred its back-up obligations to Uniroyal Holding in connection with the 1994 Amended Stipulation of Settlement and that Uniroyal Tire faced no risk of loss or liability because it has never been a party to this litigation.[10] None of these arguments are persuasive.

Tracing the line of succession through the labyrinth of transfers and sales of Uniroyal's tire business, it becomes apparent that Uniroyal, CDU Trust and Uniroyal Holding are successors and assigns of and to the original indemnitees and are entitled to indemnification from Michelin, the successor to the original indemnitor, Uniroyal Tire.

The indemnification obligation runs in a direct path from Uniroyal Tire to Michelin. When Uniroyal transferred the obligations, liabilities and assets of its tire business through Uniroyal Holding to Uniroyal Tire, Uniroyal Tire agreed to indemnify and hold harmless Uniroyal, and its successors and assigns, from all liabilities or claims arising out of, *inter alia*, the obligation to pay welfare benefits to Uniroyal's tire retirees. When Uniroyal Tire transferred the obligations, liabilities and assets of the tire business to the UGTC Partnership, the UGTC Partnership agreed to indemnify "Uniroyal, Uniroyal Tire, and their successors and assigns for liabilities and claims arising out of, inter alia, the obligation to pay welfare benefits to Uniroyal's tire retirees". When UGTC acquired the tire business from the UGTC Partnership, it also acquired the indemnification obligations to Uniroyal and Uniroyal Tire. When Michelin acquired UGTC, it assumed UGTC's indemnification obligations.

Michelin does not dispute this path of succession as to liability for indemnification. Its dispute is with the succession or assignment of Uniroyal's right to indemnification. But that path is also easily traceable.

There is no question that the right of indemnification runs to Uniroyal and its successors and assigns. While Michelin is correct that there is no evidence that Uniroyal assigned its indemnification rights to CDU Trust or Uniroyal Holding, the absence of such an assignment does not preclude a finding that Uniroyal's right to indemnification devolved to its successor under the "successors and assigns" language of the indemnification agreement.

■ A successor is a person who succeeds to the rights, responsibilities, or place of another, or replaces or follows another. *See* Black's Law Dictionary 1446 (7th ed.1999). With regard to corporations, a successor is one "that, through amalgamation, consolidation or other assumption of interests, is vested with the

---

10. The apparent reason why Uniroyal Tire has not been a party to this action is that, in the Restated Assumption & Indemnification Agreement, Uniroyal Tire expressly authorized Uniroyal to undertake the defense of any action that implicated its indemnification obligations.

rights and duties of an earlier corporation." *Id.* Here, CDU Trust, as the successor-in-interest to Uniroyal, assumed Uniroyal's back-up liability to the tire retirees. Thereafter, Uniroyal Holding assumed the back-up obligations to the tire retirees that CDU Trust had assumed from Uniroyal. Accordingly, Uniroyal Holding is Uniroyal's successor, both with respect to the back-up benefit obligations to the tire retirees and the concomitant right to indemnification. Uniroyal Holding is thus a proper party to seek indemnification.

B. *Uniroyal Holding Incurred Expenses in the Enforcement Action That Are Subject to Indemnification*

■ There is also no merit to Michelin's assertions that the indemnification provision of the UGTC Partnership Assumption & Indemnification Agreement only provides for indemnification in defensive situations, and that the *Tourangeau* plaintiffs did not and would not have made a claim against any Uniroyal entity in connection with Michelin's claim that it was not bound by the Consent Judgment.

In support of this claim, Michelin mistakenly relies on a clause of the UGTC Partnership & Indemnification Agreement which provides:

[i]f any action is brought or any claim is made against an Indemnitee and such Indemnitee determines that indemnification with respect to such action or claim, in whole or part, may be sought hereunder, such indemnitee shall ... notify the Partnership in writing of such a claim, and the Partnership shall assume the defense of such action or claim ....

Michelin's reliance on this provision is unavailing because, as Michelin correctly points out in another context, such a provision cannot be read in isolation. Rather, the meaning and intent of this clause, as well as the entire extent of the indemnitor's obligations can only be ascertained by construing the Agreement's indemnification provisions in their entirety. *See Hooper Assocs. Ltd. v. AGS Computers, Inc.,* 74 N.Y.2d 487, 492, 549 N.Y.S.2d 365, 548 N.E.2d 903 (1989). When so construed, it is clear that the clause on which Michelin relies merely governs the indemnitees' obligation to give notice when a claim is made against it and the indemnitor's right to assume the defense of such a claim. It does not purport to limit the indemnitees' right to indemnification to only those situations in which a third-party claim is asserted against them.

Indeed, when the indemnification provisions of the UGTC Partnership Assumption & Indemnification Agreement are read in their entirety, it is apparent that the expenses Uniroyal or Uniroyal Holding incurred in the Enforcement Action are covered. This is so because the Agreement provides that indemnification is available:

from and against any and all losses, liabilities, claims, damages, costs and expenses (including reasonable attorneys' fees and any and all expenses whatsoever reasonably incurred in investigating, preparing or defending against any litigation, commenced or threatened, or any claim whatsoever ...) (collectively, "Loss") arising out of or related, or purporting to be related in any manner to the obligations and liabilities hereby assumed by the Partnership.

In the Enforcement Action, Uniroyal's successor incurred a covered "Loss;" i.e., attorneys' fees and costs to defend against a commenced or threatened litigation or claim relating to the obligation to provide welfare benefits that the UGTC Partnership assumed from Uniroyal Tire.

This conclusion is not altered by Michelin's claim that Uniroyal Holding and the *Tourangeau* plaintiffs entered an agreement, an alleged "cooperation pact," when they renegotiated the settlement agreement in 1994. Not only is Michelin incorrect in its assertion that the Amended Settlement Stipulation totally insulates Uniroyal Holding from liability to the *Tourangeau* plaintiffs, Michelin is also incorrect that Uniroyal Holding forfeited its right to indemnification by cooperating with the *Tourangeau* plaintiffs in opposing Michelin's repudiation of its obligation to pay vested benefits to the tire retirees. Indeed, these arguments evidence Michelin's fundamental misunderstanding of the terms of the Amended Settlement Stipulation and the scope of Uniroyal Holding's back-up obligations to the tire retirees.

Under the Amended Settlement Stipulation, if a successor to a former Uniroyal subsidiary, i.e., Michelin, defaulted on its obligation to provide welfare benefits to any group of *Tourangeau* plaintiffs, Uniroyal Holding would be obligated to provide benefits to those plaintiffs, but at a reduced level than they would receive if there were no default. The Amended Settlement Stipulation further provides that Uniroyal Holding would cooperate with the *Tourangeau* plaintiffs in opposing such a default.[11]

But merely because the Amended Settlement Stipulation provides that Uniroyal Holding will cooperate with the *Touran-geau* plaintiffs in the event of a repudiation or threatened default by a primary obligor, or merely because Uniroyal Holding did, in fact, side with the *Tourangeau* plaintiffs in the Enforcement Action, does not mean that Uniroyal Holding was not also acting in furtherance of its own interest—in defense of a threatened claim by the tire retirees (i.e., a third party) for benefits for which Uniroyal Holding would be liable if Michelin had prevailed in its claim that it was not bound by the Consent Judgment.

### C. *Michelin's Indemnification Obligations Did Not Expire When the UGTC Partnership Dissolved*

■ Finally, there is no merit to Michelin's claim that Uniroyal Holding is not entitled to indemnification because under the UGTC Partnership Assumption & Indemnification Agreement, only the UGTC Partnership, not the UGTC Partnership and its successors and assigns, agreed to provide indemnification, and thus the UGTC Partnership's indemnification obligations expired when the UGTC Partnership dissolved and thereafter the Partnership's successor agreed to indemnify only Uniroyal Tire.

There are numerous flaws in Michelin's argument. First, Michelin provides no authority for its contention that a partnership's assumed liabilities or indemnification obligations expire when a partnership dissolves. Second, this is the first time

---

11. Paragraph 16(e) of the Amended Settlement Stipulation provides: "[A]ll obligations ... of Uniroyal Holding hereunder to provide medical and prescription drug benefits to Eligible Retirees ... in the event of any default or other action or omission by any former Uniroyal subsidiary (or successor to such a subsidiary) that results in the cancellation, discontinuance, interruption or material reduction of benefits provided to Eligible Retirees by such entity shall be limited to such benefits as modified to the level set forth in . the first sentence of subparagraph 16(d), and neither Uniroyal Holding, the Liquidating Trust nor any of their respective beneficiaries, shareholders, or current or future affiliates shall have any liability or obligation in respect of such benefits except as so modified, provided that Uniroyal Holding will continue thereafter to cooperate with the Class Representatives as to the enforcement of the provisions of this Settlement Stipulation against other former Uniroyal subsidiaries or their successors."

that Michelin has claimed that it did not assume the liabilities and obligations of the UGTC Partnership. To the contrary, Michelin has always admitted that it is the successor-in-interest to the UGTC Partnership. Third, and most significantly, Michelin's claim finds no support in the 1989 Acquisition Agreement, which was executed when the UGTC Partnership was acquired by UGTC in 1989.

By 1988, the UGTC Partnership was owned by two partners: UGTC, a wholly-owned subsidiary of UGTC Holding, owned a 99% interest, and Uniroyal Tire, a wholly-owned subsidiary of Uniroyal Holding, owned a 1% interest. UGTC had acquired its 99% interest in the Partnership by merger of the Michelin-affiliated Tire Holding 2 and UGTC Holding. Tire Holding 2 was owned by Michelin-affiliated Tire Holding 1. In 1989–1990, Michelin-affiliated Tire Holding 3, which was also owned by Tire Holding 1, purchased Uniroyal Tire's 1% interest in the Partnership, and thereby became a partner in the Partnership. As a result of these transactions, Tire Holding 1, Tire Holding 2 and Tire Holding 3 acquired the assets and assumed the liabilities of the UGTC Partnership and the resulting entity was renamed The Uniroyal Goodrich Tire Company ("UGTC").

■ When Tire Holding 2 and UGTC Holding merged, the surviving company expressly assumed all liabilities and obligations of UGTC Holding.[12] One of those liabilities was the obligation of UGTC Holding, as a partner in the UGTC Partnership, to indemnify Uniroyal and Uniroyal Tire, and their successors and assigns. Indeed, even if the obligation had not been expressly assumed, under Delaware law, which governed the merger, the surviving company would assume by operation of law all debts, liabilities and duties of the merging companies to the same extent as if it had incurred them itself. See Del.Code Ann. Title 8 § 259 (1991).

■ Moreover, when Tire Holding 3 purchased Uniroyal Tire's 1% interest in the Partnership, it became a partner in the UGTC Partnership and, under New York partnership law, became jointly liable with UGTC, the other partner, for the debts and obligations of the UGTC Partnership. See N.Y. Partnership Law § 26(a)(2) (McKinney Supp.2000). One of those obligations for which it became jointly liable was the UGTC Partnership's indemnification obligations to Uniroyal and Uniroyal Tire, and their successors and assigns.

In addition, in the 1989 Acquisition Agreement, which was executed in connection with the restructuring and acquisition of the UGTC Partnership, the obligations contained in the UGTC Partnership Assumption & Indemnification Agreement were identified as obligations being assumed by the successors and purchasers. Among the obligations thus assumed was the UGTC Partnership's obligation to indemnify Uniroyal and Uniroyal Tire, and their successors and assigns.

Moreover, the 1989 Acquisition Agreement also provided that UGTC would "[c]omply with and perform all obligations with respect to Uniroyal Tire's rights to indemnification under [the UGTC Partnership Assumption & Indemnification Agreement] to the full extent of such rights in existence on the date hereof."

Thus, under the unambiguous language of the 1989 Acquisition Agreement, it is clear that the parties intended that the

---

12. The 1989 Acquisition Agreement provides "[b]y virtue of the Merger, ... the Surviving Corporation shall ... by operation of law assume and be liable for all the liabilities, obligations and penalties of Tire Holding 2 and UGTC Holding."

successor to the UGTC Partnership would assume the indemnification obligations of the UGTC Partnership and Uniroyal Tire. Thus, not only does Uniroyal and its successor, Uniroyal Holding, have a right to indemnification from the successor to the Partnership, Uniroyal and its successor would also have a right to indemnification from the Partnership's successor through Uniroyal Tire's rights under the 1989 Acquisition Agreement and Uniroyal Tire's obligation under the 1985 Assumption & Indemnification Agreement and the 1986 Restated Assumption & Indemnification Agreement.

Based on the foregoing, it is clear that UGTC, as successor in interest to the UGTC Partnership, agreed to assume the Partnership's indemnity obligations for claims, losses, and liabilities, including attorneys' fees incurred in connection with the vested welfare benefits owed to the *Tourangeau* plaintiffs by virtue of the Consent Judgment. Accordingly, there is no merit to the claim that UGTC or Michelin, its successor in interest, was relieved of the liability to indemnify Uniroyal and its successors and assigns when the UGTC Partnership was acquired by UGTC and dissolved.

### CONCLUSION

For the foregoing reason, the Motion by Uniroyal for Summary Judgment on its Claim that it is Entitled to Indemnification from Michelin North America, Inc. [doc. # 488] is GRANTED. The Motion for Summary Judgment by Michelin North America, Inc. Against Uniroyal, Inc. [doc. # 492] is DENIED.