# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2022 Term

_____

No. 21-0183

_____

**FILED**

**June 13, 2022**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**TONI G. MILMOE,**
**EXECUTRIX OF THE ESTATE OF**
**THELMA MARIE STURGEON,**
Plaintiff Below, Petitioner,

**V.**

**PARAMOUNT SENIOR LIVING AT ONA, LLC,**
Defendant Below, Respondent.

_____

Appeal from the Circuit Court of Cabell County
The Honorable Christopher D. Chiles, Judge
Civil Action No. 19-C-370

**AFFIRMED**

_____

Submitted: March 2, 2022
Filed: June 13, 2022

Matthew P. Stapleton, Esq.
Stapleton Law Offices
Huntington, West Virginia
W. Stephen Flesher, Esq.
Law Offices of W. Stephen Flesher,
LLC
Barboursville, West Virginia
Attorneys for the Petitioner

Douglas C. Hart, Esq.
Pittsburgh, Pennsylvania
Anthony C. Sunseri, Esq.
The Maxwell Centre
Wheeling, West Virginia
Attorneys for the Respondent,
Paramount Senior Living at Ona,
LLC

**JUSTICE ARMSTEAD delivered the Opinion of the Court.**

**JUSTICE BUNN did not participate in the decision in this case.**

# SYLLABUS BY THE COURT

1.      "[T]he purchaser of all the assets of a corporation [is] not liable for the debts or liabilities of the corporation purchased."  Syllabus Point 2, in part, *Davis v. Celotex Corp.*, 187 W. Va. 566, 420 S.E.2d 557 (1992).

2.      "This Court may, on appeal, affirm the judgment of the lower court when it appears that such judgment is correct on any legal ground disclosed by the record, regardless of the ground, reason or theory assigned by the lower court as the basis for its judgment."  Syllabus Point 3, *Barnett v. Wolfolk*, 149 W. Va. 246, 140 S.E.2d 466 (1965).

3.      "Where a party is unable to resist a motion for summary judgment because of an inadequate opportunity to conduct discovery, that party should file an affidavit pursuant to *W. Va. R. Civ. P.* 56(f) and obtain a ruling thereon by the trial court. Such affidavit and ruling thereon, or other evidence that the question of a premature summary judgment motion was presented to and decided by the trial court, must be included in the appellate record to preserve the error for review by this Court."  Syllabus Point 3, *Crain v. Lightner*, 178 W. Va. 765, 364 S.E.2d 778 (1987).

4.      "A litigant may not silently acquiesce to an alleged error, or actively contribute to such error, and then raise that error as a reason for reversal on appeal." Syllabus Point 1, *Maples v. W. Va. Dep't of Com.*, 197 W. Va. 318, 475 S.E.2d 410 (1996).

i

**Armstead, Justice:**

Plaintiff below, Toni Milmoe ("Ms. Milmoe"), as executrix of the estate of Thelma Marie Sturgeon ("Ms. Sturgeon"), her mother, appeals an order of the Circuit Court of Cabell County that granted summary judgment in favor of the defendant below, Paramount Senior Living at Ona, LLC ("Paramount"). In its summary judgment order, the circuit court concluded that Paramount, who operates a senior-care home, was not responsible as a successor corporation for alleged wrongful conduct by Passage Midland Meadows Operations, LLC ("Passage"), a limited liability company that previously operated the home when Ms. Sturgeon was a resident there. In this appeal, Ms. Milmoe alleges that the circuit court improperly applied and expanded the general rule that "the purchaser of all the assets of a corporation [is] not liable for the debts or liabilities of the corporation purchased" in reaching its determination that Paramount was not liable as a successor corporation. Syl. Pt. 2, in part, *Davis v. Celotex Corp.*, 187 W. Va. 566, 420 S.E.2d 557 (1992). In addition, she claims that the circuit court erred in failing to find Paramount could be held liable under two exceptions to that general rule. Finally, Ms. Milmoe contends that the circuit court erred because the case was not ripe for summary judgment. After reviewing the briefs and oral arguments of the parties, the appellate record, and relevant law, we conclude that, on the record presented in this case, Ms. Milmoe has failed to produce evidence that Paramount is the corporate successor of Passage. We also find no merit in Ms. Milmoe's claim that the case was not ripe for summary judgment

1

because the discovery deadline had not yet passed.  Contrary to her assertions on appeal, during the summary judgment hearing before the circuit court her counsel acknowledged that the evidence was sufficient for a summary judgment ruling.  Accordingly, we affirm the circuit court's summary judgment order.

## I.

## FACTUAL AND PROCEDURAL HISTORY

The basic facts of this case do not appear in dispute.  Petitioner's decedent, Ms. Sturgeon, became a resident of a nursing home and/or assisted living facility ("senior-care home") in Ona, West Virginia, on August 20, 2016.  At the time Ms. Sturgeon moved into the senior-care home, and throughout her residency there, the facility was operated by Passage, a Delaware limited liability company owned by Andrew Turner and William Lasky.  Passage did not own the senior-care home facility.  The senior-care home was instead owned by Welltower, Inc. ("Welltower"), who is not a party to this action.  Passage operated the senior-care home pursuant to a sublease agreement.[1]

---

[1] According to documents in the record from the United States Bankruptcy Court for the Southern District of West Virginia, Welltower had a master lease agreement with Passage Property (believed to be Passage Healthcare Properties, LLC, one of the debtors in bankruptcy), through which it leased three separate senior-care home facilities to Passage Property as tenant.  Passage Property, in turn, subleased each of the three facilities to an affiliated subtenant, one of which was Passage Midland Meadows Operations, LLC, referred to herein as "Passage."  Under this sublease, Passage operated the senior-care facility in Ona, West Virginia.  According to a motion to dismiss filed by the United States Bankruptcy Trustee ("Bankruptcy Trustee" or "Trustee") in Passage's bankruptcy proceedings, sometime prior to March 2017, when Passage filed for Chapter

(continued . . . )

Ms. Milmoe alleges that, during Ms. Sturgeon's time at the senior-care home, she was the victim of negligence, including the fact that she repeatedly suffered slip and fall accidents as well as "eloping" incidents in which she left the facility. One "eloping" incident resulted in Ms. Sturgeon being found lying on the ground on the side of a nearby road. Ms. Milmoe contends that this continuous course of negligence caused serious personal injury to Ms. Sturgeon, which resulted in medical expenses, pain, suffering, and ultimately proximately caused her death on November 13, 2017.

In March 2017, about midway through the period during which Ms. Sturgeon resided at the senior-care home, Passage, along with three affiliated companies (collectively "the Passage Companies"),[2] filed for Chapter 11 bankruptcy protection in the United States Bankruptcy Court for the Southern District of West Virginia. Thereafter, in December 2017, after Ms. Sturgeon's death, the Passage Companies filed an "Emergency Motion for Authorization to Enter into Operations Transfer Agreement and Related Transactions," in which they, inter alia, sought authority to enter into an Operations

11 bankruptcy protection, Welltower terminated the master lease it had with Passage Property and filed an action in the United States District Court for the Northern District of Ohio seeking the appointment of a receiver. On December 1, 2017, the district court entered an order finding that "the master lease was lawfully terminated and that there was no insolvency related bar to continuation of the receivership proceeding by Welltower to recover possession of the facilities and transition to a new lease[.]"

[2] The three affiliated companies that, along with Passage, sought Chapter 11 bankruptcy protection were Passage Healthcare Property, LLC; Passage Village of Laurel Run Operations, LLC; and Passage Longwood Manor Operations, LLC.

Transfer Agreement ("OTA") with Paramount. The Passage Companies also sought permission to "turn over and release to Welltower, Inc. (or its designee)," as the accounts lienholder, certain of the Passage Companies' cash collateral consisting of cash and the proceeds of accounts receivable that pre-dated the closing of the OTA.[3]

By order entered on December 29, 2017, the bankruptcy court granted the Passage Companies' motion, expressly finding that "good cause exist[ed] to grant the Motion and that the relief requested in the Motion [was] in the best interests of the Debtors, their estates, creditors, residents and employees." The bankruptcy court authorized the Passage Companies to "enter into and implement the OTA with Paramount," and also granted relief from the bankruptcy stay "to the extent necessary to permit the Debtors to promptly turn over and release to the Accounts Lienholder [Welltower] or its designee the Closing Date Cash and the proceeds of the Pre-Closing AR [accounts receivable] received

---

[3] In the motion, the Passage Companies further sought permission to obtain "postpetition advances from Welltower, Inc. or an affiliate thereof . . . to assist with meeting payroll obligations and certain other essential expenses, in an amount not to exceed $500,000.00." In their motion, the Passage Companies represented that

> Welltower understands that the Debtors do not presently have an ability to repay the Postpetition Advance and that there is a substantial probability that the Postpetition Advance will never be repaid by the Debtors. Nonetheless, Welltower is willing to make the Postpetition Advance as a part of the overall negotiated arrangements described herein, in order to facilitate a smooth transition to the replacement operator.

The bankruptcy court authorized the requested advances.

on or after the Closing Date." In the bankruptcy court's order, the Passage Companies were "authorized and directed to turn over and release such Pre-Closing AR."

On January 1, 2018, in accordance with the authority granted by the bankruptcy court, Passage and Passage Healthcare, LLC,[4] entered into the OTA with Paramount, a company owned solely by James Cox.[5] Paramount assumed the operation of the senior-care home on the same day, as that was the purpose for which Paramount had been formed. The OTA was not a purchase agreement, though some of Passage's

---

[4] Insofar as Passage Healthcare LLC is identified in the OTA as a Puerto Rico limited liability company, it does not appear to be the same entity as Passage Healthcare Property, LLC, which was one of the debtors in bankruptcy. Passage Healthcare Property, LLC, is identified in a bankruptcy filing as a Delaware limited liability company.

[5] Ms. Milmoe's complaint and the circuit court's summary judgment order both identify Paramount as a West Virginia limited liability company. However, Paramount states in its answer to the complaint that it is a Pennsylvania limited liability company with its principal place of business in Pennsylvania. Similarly, the OTA identifies Paramount as a Pennsylvania limited liability company. It has been recognized that:

> In West Virginia, successor liability is analyzed under the law of the transferee corporation's state of incorporation. *See State ex rel. Elish v. Wilson*, 189 W. Va. 739, [744,] 434 S.E.2d 411, 416 (1993) (adopting, for issues involving the rights and liabilities of a corporation, [the] "general rule regarding choice of law requir[ing] that the substantive law of the place of incorporation is to be applied unless another state has a more substantial connection or the application of the other state's law would be contrary to our public policy.").

*Carter Enters., Inc. v. Ashland Specialty Co.*, 257 B.R. 797, 802 (S.D.W. Va. 2001). The circuit court and the parties have applied West Virginia law in addressing the issues pertinent to this appeal.

consumable goods, which are described in more detail below, did transfer to Paramount as part of the OTA transaction.[6] Furthermore, Welltower remains the owner of the senior-care home facility, and Paramount occupies and operates the facility in its capacity as a subtenant.[7]

On January 2, 2018, immediately after Paramount assumed operation of the senior-care facility, the Bankruptcy Trustee filed a motion to dismiss the Passage Companies' bankruptcy proceedings. In support thereof, the Trustee explained that the debtors'

> sole source of income [had been] from the operation of the Senior-Care Facilities. Effective January 1, 2018, the debtors' [sic] no longer operate the Senior-Care Facilities and will receive no further income. The debtors have no ability to fund a Chapter 11 plan and, as reported to the Court, are administratively insolvent.

The Trustee further advised the bankruptcy court that there were insufficient funds to convert the case to a Chapter 7 bankruptcy proceeding "as all of the debtors['] assets are secured by Welltower," and that "based on Welltower's secured claims[,] there [were] not

---

[6] In this regard, Paramount states that it was not purchasing Passage's substantial assets as part of the OTA and that, as such, it "did not pay consideration as part of the transaction – other than absorbing the financial risk associated with assuming the operation of a failing facility."

[7] According to the OTA, HCRI Pennsylvania Properties Holding Company and Welltower, as landlords of the senior-care facility, were to enter a master lease with Paramount Senior Living Properties, LLC ("Paramount Properties"), an affiliate of Paramount, as the tenant. Paramount Properties was then to sublease the senior-care facility to Paramount.

sufficient assets to pay outstanding administrative claims, priority claims or general unsecured claims." It appears that the bankruptcy court granted the Trustee's motion and closed the bankruptcy case on or about January 25, 2018, but the order itself is not included in the record on appeal.

On August 21, 2019, Ms. Milmoe filed her complaint against both Paramount, (as an alleged successor in interest to Passage), and Midland Meadows Senior Living, LLC,[8] asserting claims of negligence and wrongful death. After Paramount filed its answer and affirmative defenses, the parties apparently reached an agreement to conduct discovery in phases, with the first phase focusing on whether Paramount could be held accountable for the actions of Passage under Ms. Milmoe's successor liability theory. The parties further agreed to a deadline for dispositive motions. Following a period of discovery, and within the established deadline for dispositive motions, Paramount filed a motion for summary judgment in which it argued that, because it did not purchase all, or even a substantial portion of, Passage's assets, it was not liable as a successor to Passage and, thus, Ms. Milmoe could not rely on exceptions to the general rule that "the purchaser of all the assets of a corporation [is] not liable for the debts or liabilities of the corporation purchased" to establish liability on the part of Paramount. Syl. Pt. 2, in part, *Davis*, 187 W. Va. 566, 420 S.E.2d 557. Ms. Milmoe filed her response to Paramount's motion, and

---

[8] According to the complaint, Midland Meadows Senior Living, LLC, was a predecessor in interest to Passage.

the circuit court held a hearing at which the parties orally presented their summary judgment arguments. Following the hearing, the circuit court entered an order on February 10, 2021, in which it granted Paramount's motion for summary judgment and dismissed Ms. Milmoe's complaint in its entirety. Thereafter, the circuit court entered an amended order on March 11, 2021, that granted Paramount's motion for summary judgment and dismissed Ms. Milmoe's complaint only as to Paramount. The amended order noted that Ms. Milmoe's complaint as to defendant Midland Meadows Senior Living, LLC, is not dismissed and remains on the circuit court's active civil docket. This appeal by Ms. Milmoe followed.

## II.

## STANDARD OF REVIEW

Our review of Ms. Milmoe's appeal of the circuit court's order granting summary judgment to Paramount is de novo. "A circuit court's entry of summary judgment is reviewed *de novo*." Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994). Accordingly,

> [i]n reviewing a circuit court's order granting summary judgment this Court, like all reviewing courts, engages in the same type of analysis as the circuit court. That is "'we apply the same standard as a circuit court,' reviewing all facts and reasonable inferences in the light most favorable to the nonmoving party."

*State ex rel. Vanderra Res., LLC v. Hummel*, 242 W. Va. 35, 42, 829 S.E.2d 35, 42 (2019) (quoting *Fayette Co. Nat'l Bank v. Lilly*, 199 W. Va. 349, 353 n.8, 484 S.E.2d 232, 236 n.8

8

(1997), *overruled on other grounds by Sostaric v. Marshall*, 234 W. Va. 449, 766 S.E.2d 396 (2014)).  To this end, "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law."  Syl. Pt. 3, *Aetna Cas. & Sur. Co. v. Fed. Ins. Co. of N.Y.*, 148 W. Va. 160, 133 S.E.2d 770 (1963).  In other words,

> [s]ummary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove.

Syl. Pt. 4, *Painter*, 192 W. Va. 189, 451 S.E.2d 755.  We will apply the foregoing standards in resolving this appeal.

## III.

## DISCUSSION

Ms. Milmoe seeks to hold Paramount accountable under a theory of corporate successor liability.  Thus, the dispositive question in this appeal is whether there exists on the record in this case a genuine issue of fact regarding Paramount's status as a successor to Passage.  Ms. Milmoe raises three grounds upon which she claims the circuit court erred in failing to find Paramount subject to successor liability for her claims.  She contends that the circuit court erred in granting summary judgment in favor of Paramount by (1) improperly applying and extending the law related to successor liability; (2) finding that Paramount was not a mere continuation of Passage; and (3) failing to find that the

9

transaction between Paramount and Passage was not made in good faith. She additionally contends that summary judgment was premature. We first turn our attention to the question of whether Paramount is, in fact, a successor to Passage, which question we find dispositive.

## A. Successor Liability

This Court has adopted the general rule acknowledging that "the purchaser of all the assets of a corporation [is] not liable for the debts or liabilities of the corporation purchased." Syl. Pt. 2, in part, *Davis*, 187 W. Va. 566, 420 S.E.2d 557. This is a widely accepted rule. *See* 15 William M. Fletcher, *Fletcher Cyclopedia of the Law of Corporations*, § 7122, at 229-30 (Perm. ed. 2017) ("The general rule, which is well settled, is that where one company sells or otherwise transfers all its assets to another company, the latter is not liable for the debts and liabilities of the transferor."). As is the case with general rules, "[t]his rule has . . . been tempered by a number of exceptions and statutory provisions." Syl. Pt. 2, in part, *Davis*, 187 W. Va. 566, 420 S.E.2d 557. Specifically, this Court has held that

> [a] successor corporation can be liable for the debts and obligations of a predecessor corporation if there was an express or implied assumption of liability, if the transaction was fraudulent, or if some element of the transaction was not made in good faith. . . . Finally, such liability will also result where the successor corporation is a mere continuation or reincarnation of its predecessor.

Syl. Pt. 3, *id*.

In her first assignment of error, Ms. Milmoe observes that the general rule of purchaser nonliability applies to the *purchaser* of all of the assets of a corporation, and she maintains that the circuit court improperly applied and expanded that general rule to Paramount when it is undisputed that Paramount did not purchase all of the assets of Passage. Ms. Milmoe nevertheless avers that Paramount "gained control" of Passage's "assets," and contends that Paramount failed to pay consideration for the transaction,[9] which left Passage without funds to cover its liabilities. Therefore, she reasons, without citing any authority, that Paramount should be accountable to her for Passage's alleged misconduct. No theories of successor liability may be applied to Paramount, however, unless it is first determined that Paramount is a successor corporation to Passage. Ms. Milmoe has failed to establish that Paramount is such a successor corporation.

"A successor corporation is defined as 'another corporation, which through amalgamation, consolidation, or other legal succession, becomes invested with rights and assumes burdens of [the] first corporation.'" *Total Waste Mgmt. Corp. v. Com. Union Ins. Co.*, 857 F. Supp. 140, 151 (D.N.H. 1994) (quoting *Unifirst Corp. v. Jeff Wyler Ford, Inc.*, No. CA92-08-079, 1993 WL 7875, at *3, 1993 Ohio App. LEXIS 143, at *7-8 (Ohio Ct.

---

[9] We note, however, that under the OTA Paramount did agree to undertake certain limited obligations and liabilities of Passage that effectively amount to consideration for the transaction. For example, Paramount agreed to hire Passage employees under the same terms of employment they had with Passage, including honoring their accrued vacation and other paid-time-off benefits, and all FICA, state, and federal taxes related thereto. Paramount further notes that it absorbed the financial risk of assuming the operation of a failing facility.

11

App., January 19, 1993) (per curiam)); *see also Tourangeau v. Uniroyal, Inc.*, 138 F. Supp. 2d 259, 265-66 (D. Conn. 2001) ("With regard to corporations, a successor is one 'that, through amalgamation, consolidation or other assumption of interests, is vested with the rights and duties of an earlier corporation.'" (quoting Black's Law Dictionary 1446 (7th ed. 1999))); *Corneal v. CF Hosting, Inc.*, 187 F. Supp. 2d 1372, 1375 (S.D. Fla. 2001) ("The term successor 'is generally applicable to corporations wherein one corporation by a process of amalgamation, consolidation or duly authorized legal succession becomes vested in the rights and assumes the burdens of its predecessor corporation.'" (quoting *Int'l Ass'n of Machinists v. Shawnee Indus.*, 224 F. Supp. 347, 352 (W.D. Okla.1963))); *Bouchard v. People's Bank*, 594 A.2d 1, 4 (Conn. 1991) ("[T]he term 'successor in interest' ordinarily refers to a corporation that 'by a process of amalgamation, consolidation or duly authorized legal succession, has become invested with the rights and has assumed the burdens of [another] corporation'" (quoting *D.D.J. Elec. Contractors, Inc. v. Nanfito & Sons Builders, Inc.*, 479 A.2d 1250, 1251-52 (Conn. 1984))); *Successor*, *Black's Law Dictionary* (11th ed.) (2019) ("A corporation that, through amalgamation, consolidation, or other assumption of interests, is vested with the rights and duties of an earlier corporation.").

Ms. Milmoe argues that Paramount became Passage's successor when it took over the operations of the senior-care home previously operated by Passage, and, in so

12

doing, obtained Passage's clientele[10] and employees. However, merely hiring a former operator's employees and serving its prior clientele is not sufficient to render a new operator a successor of the former operator. Rather, for one corporation to be the successor to another, the assets of the predecessor company must be transferred to the successor.

> "In order for one corporation to be deemed a successor corporation in the first place, it must be a successor to all, or substantially all, of another corporation's assets." *National Soffit & Escutcheons, Inc. v. Superior Sys., Inc.*, 98 F.3d 262, 266 (7th Cir. 1996). In other words, a transfer of assets is "an essential prerequisite to successor liability." *Carreiro v. Rhodes Gill & Co.*, 68 F.3d 1443, 1448 (1st Cir. 1995).

*Premier Cap., LLC v. KMZ, Inc.*, 984 N.E.2d 286, 292 (Mass. 2013);[11] s*ee also Med. Shoppe Int'l, Inc. v. S.B.S. Pill Dr., Inc.*, 336 F.3d 801, 803 (8th Cir. 2003) (acknowledging that "under Missouri law, transfer of all assets is a sufficient condition to invoke the general rule [of purchaser nonliability] and its exceptions," and further concluding that, insofar as

---

[10] Although Ms. Milmoe asserts that Paramount obtained "a full client base" from Passage, she does not refer to any evidence of record to indicate how many residents were at the senior-care home when Paramount took over. We reiterate that Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure requires the petitioner's brief to, inter alia, "contain appropriate and specific citations to the record[.]"

[11] It appears that a majority of jurisdictions recognize that one corporation may be a successor to another upon the transfer of all *or substantially all* of the transferee corporation's assets. However, Syllabus Point 2 of *Davis* refers to the purchase of "all the assets of a corporation" as triggering purchaser nonliability. 187 W. Va. 566, 420 S.E.2d 557. For purposes of this appeal, we need not decide whether the transfer of substantially all of a corporation's assets is sufficient to render the transferee corporation a successor, or to apply the exceptions to the general rule of purchaser nonliability, as there simply is no evidence of record in this case to show that the assets transferred from Passage to Paramount were substantial.

13

Missouri law was silent as to whether the transfer of all assets was a necessary condition, the transfer of substantial assets from the predecessor corporation was sufficient to invoke the rule and its exceptions); *Williams v. Bowman Livestock Equip. Co.*, 927 F.2d 1128, 1132 (10th Cir. 1991) (applying Oklahoma law and observing that "successor liability can be imposed . . . in limited circumstances [when there has been] a sale or transfer of all, or substantially all, the assets of a corporation").

The transfer of assets is also required for application of the exceptions to the general rule of purchaser nonliability. *See Grand Lab'ys, Inc. v. Midcon Labs of Iowa,* 32 F.3d 1277, 1281 n.5 (8th Cir. 1994) ("Most jurisdictions hold that a prerequisite to the imposition of liability against a corporation under any of the four exceptions to the nonliability of successors is a transfer or sale of all, or substantially all, the assets of the predecessor to the successor."); *Edwards v. Black Twig Mktg. & Commc'ns LLC*, 418 S.W.3d 512, 521 (Mo. Ct. App. 2013) (holding "that a transfer of all or substantially all of the assets of one corporation to another is a prerequisite to corporate successor liability under any of the four exceptions to the general rule of nonliability" and acknowledging that this is the majority rule (footnote omitted)); a*ccord* 15 Fletcher, *supra* § 7122, at 240 (referring to "[e]xceptions to the general rule of nonliability *in the event of a transfer of corporate assets*" (emphasis added)).

Ms. Milmoe has failed to establish that Paramount received all, or even substantially all, of Passage's assets, or that there is a genuine question of law as to any

such transfer of assets.  Under the OTA, the only assets that were transferred to Paramount in connection therewith were nominal assets that were characterized as facility supplies:[12]

> (D)    Facility Supplies.  On the Commencement Date, Exiting Operator [Passage] shall convey to New Operator [Paramount] all of Exiting Operator's inventory of supplies, including (without limitation) linens, consumables and food stuffs, medical supplies, office supplies, and maintenance inventory (collectively, the "Facility Supplies") used or maintained in connection with the operation of the Facility which were either (i) purchased within ninety (90) days of the Commencement Date or (ii) if purchased prior to ninety (90) days of the Commencement Date, do not expire within ninety (90) days after the Commencement Date.

Other assets, such as cash, accounts receivable, and stock, were expressly excluded:

> (E)    Excluded Assets. Except as expressly set forth herein, *no other assets of Exiting Operator shall be transferred to New Operator, and no other assets of Exiting Operator shall be included as Transferred Assets for the purposes of this Agreement*.  Without limiting the generality of the foregoing, and notwithstanding anything to the contrary contained in this Agreement, *the following assets of Exiting Operator shall not be transferred to New Operator and shall not constitute Transferred Assets: all cash, cash equivalents, accounts receivable, notes receivable, capital stock, tax refunds, proprietary information and know-how and forms, including accounting and other proprietary software, equipment or other items that are leased/licensed pursuant to leases/licenses that are not assigned to New Operator, and any other items specifically designated as an excluded asset on Schedule 2(C)*.

---

[12] The record in this case is clear that the senior-care home facility itself was never owned by Passage and is not owned by Paramount.  Rather, the OTA plainly states that Welltower is the owner of the senior-care home facility.  In her response opposing Paramount's motion for summary judgment, Ms. Milmoe acknowledged that "[t]he facility operated by Passage was and is currently owned by Welltower, Inc."

15

(Emphasis added).[13]  The OTA further clarified that Paramount "shall have no right, title, interest, claim, lien encumbrance or entitlement, directly or indirectly to any accounts receivable with respect to the Facility relating to the period prior to [January 2, 2018,] the Commencement Date [of the OTA]."

Accordingly, the evidence of record shows that Paramount merely assumed operations of a failing senior-care home that was formerly operated by Passage.  Although certain nominal assets were transferred from Passage to Paramount, presumably to facilitate a smooth transition from one operator to another with minimal disruption to the residents of the facility, Ms. Milmoe has failed to present evidence to show that Paramount was the recipient of sufficient assets from Passage such that Paramount could be potentially liable to her as successor corporation to Passage.

Although the circuit court granted summary judgment in favor of Paramount based on its conclusion that none of the exceptions to the general rule of purchaser

---

[13] Schedule 2(C) states in its entirety:

SCHEDULE 2(C)
Excluded Assets

All cash, cash equivalents, accounts receivable through the Commencement Date, notes receivable, capital stock, tax refunds, proprietary information and know-how and forms, including accounting and other proprietary software, equipment or other items that are leased/licensed by Exiting Operator pursuant to leases/licenses that are not assigned to New Operator.

16

nonliability applied, we may affirm on any ground apparent from the record.  "This Court may, on appeal, affirm the judgment of the lower court when it appears that such judgment is correct on any legal ground disclosed by the record, regardless of the ground, reason or theory assigned by the lower court as the basis for its judgment."  Syl. Pt. 3, *Barnett v. Wolfolk*, 149 W. Va. 246, 140 S.E.2d 466 (1965).  Here, the record does not reflect that Paramount obtained all, or substantially all the assets of Passage.  Thus, Ms. Milmoe has failed to establish that Paramount falls within the general rule related to a purchaser's liability or lack thereof, and we need not look to any alleged exceptions to that general rule. While the circuit court granted summary judgment in Paramount's favor because it found that none of the exceptions to the general rule applied, we believe summary judgment, while warranted, was actually proper because Ms. Milmoe has failed to establish a question of fact as to Paramount's status as a successor corporation.  Therefore, we affirm the circuit court's grant of summary judgment to Paramount pursuant to our authority to so affirm the court based on any legal ground disclosed by the record.

### B. Additional Discovery

In her final assignment of error, Ms. Milmoe argues that this case was not ripe for summary judgment.  She reasons that, despite the parties' agreement to an early dispositive motion deadline, and the fact that Paramount moved for summary judgment within the established timeframe, "there remained sufficient time to discover additional facts," because the circuit court's amended discovery deadline had not yet passed.  She

17

further asserts that "Paramount [had] declined to fully respond to [her] outstanding written discovery." This argument lacks merit.

It is well established that

> [i]f the moving party makes a properly supported motion for summary judgment and can show by affirmative evidence that there is no genuine issue of a material fact, the burden of production shifts to the nonmoving party who must either (1) rehabilitate the evidence attacked by the moving party, (2) produce additional evidence showing the existence of a genuine issue for trial, or (3) *submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f) of the West Virginia Rules of Civil Procedure.*

Syl. Pt. 3, *Williams v. Precision Coil, Inc.*, 194 W. Va. 52, 459 S.E.2d 329 (1995) (emphasis added). Furthermore,

> [w]here a party is unable to resist a motion for summary judgment because of an inadequate opportunity to conduct discovery, that party should file an affidavit pursuant to *W. Va. R. Civ. P.* 56(f) and obtain a ruling thereon by the trial court. *Such affidavit and ruling thereon, or other evidence that the question of a premature summary judgment motion was presented to and decided by the trial court, must be included in the appellate record to preserve the error for review by this Court.*

Syl. Pt. 3, *Crain v. Lightner*, 178 W. Va. 765, 364 S.E.2d 778 (1987) (second emphasis added). Here, Ms. Milmoe has failed to direct this Court to any affidavit in the record citing the need for additional discovery that was filed pursuant to West Virginia Rule of Civil Procedure 56(f). Additionally, during the circuit court's hearing on Paramount's motion for summary judgment, counsel for Ms. Milmoe stated

18

> I think the facts -- to be honest, I think the facts related to this motion, pretty much could be stipulated, it is just a question of how you interpret the West Virginia law to those facts.
>
> I think we could have -- in hindsight, filed a cross-motion for summary judgment . . . .

"A litigant may not silently acquiesce to an alleged error, or actively contribute to such error, and then raise that error as a reason for reversal on appeal." Syl. Pt. 1, *Maples v. W. Va. Dep't of Com.*, 197 W. Va. 318, 475 S.E.2d 410 (1996). Due to Ms. Milmoe's failure to file an affidavit requesting the opportunity to engage in additional discovery, and in light of the above-quoted comments, which contradict the arguments Ms. Milmoe has made on appeal, we find no error in the circuit court's timely ruling on Paramount's summary judgment motion.

## IV.

## CONCLUSION

For the reasons explained above, and based on the alternative grounds set forth herein, we affirm the Circuit Court of Cabell County's grant of summary judgment in favor of Paramount as ordered in the circuit court's amended order of March 11, 2021.

Affirmed.

19